IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIFFANY ADAMS, on behalf of herself and those similarly situated,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>PARTS DISTRIBUTION XPRESS, INC., *et al.*,<br>　　　　　Defendants. | :<br>:<br>:<br>:<br>:　Civil No. 2:20-cv-00697-JMG<br>:<br>:<br>: |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                           **March 22, 2021**

　　　　Plaintiff Tiffany Adams initiated this potential collective action against Defendants Parts Distribution Xpress, Inc., PDX North, Inc., PDX South, Inc., and PDX West, LLC (collectively, "PDX") alleging that they misclassified their delivery drivers as independent contractors and failed to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). ECF No. 15. Presently before the Court is PDX's motion to compel arbitration and, in the alternative, dismiss for failure to state a claim. *See* ECF No. 16. For the reasons that follow, the Court will compel the parties to arbitrate this matter.

　　**I.**　　**FACTUAL ALLEGATIONS**[1]

　　　　PDX provides delivery services for its customers, replacing or supplementing their customers' use of in-house drivers. ECF No. 15 ¶ 29. PDX's customers are "various businesses in the automotive industry throughout the east coast," and PDX's drivers deliver automotive

---

[1] The following summary is based on the factual allegations contained in the amended complaint. For purposes of deciding this motion, the allegations are presumed to be true and are considered in the light most favorable to the plaintiff.

parts and supplies to them. *Id.* ¶¶ 30–31 (citing to PDX's website). The automotive parts are often manufactured in other states and countries. *See id.* ¶ 30.

In June 2018, Adams signed a contract and began working as a driver for PDX. *See id.* ¶ 45, 48. Adams stayed with the company for over a year, leaving in July 2019. *Id.* During her tenure, PDX misclassified her as an "independent contractor," rather than an "employee," and failed to compensate her for working more than forty hours a week. *See id.* ¶¶ 45, 51–87. As such, Adams has brought claims, on behalf of herself and others similarly situated, against PDX to recover overtime compensation in accordance with the FLSA.

II.     **STANDARD OF REVIEW**

   A. **Motion to Compel Arbitration**

A motion to compel arbitration is governed either by the motion to dismiss standard of Rule 12(b)(6) or the motion for summary judgment standard of Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773–74 (3d Cir. 2013). The motion to dismiss standard applies "when it is apparent, based on the face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause." *Id* at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). The summary judgement standard applies "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" thereby entitling the parties "to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* (alteration in original) (quoting *Somerset*, 832 F. Supp. 2d at 482).

### B. Motion to Dismiss

To survive a motion to dismiss, the complaint must contain factual allegations that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Facial plausibility means that when accepting the complaint's factual allegations as true and in the light most favorable to the plaintiff, a "reasonable inference" may be drawn that "the defendant is liable for the misconduct alleged." *See id.* When deciding a motion to dismiss, courts generally can only consider the allegations contained in the complaint, any attached exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### III. DISCUSSION

#### A. Motion to Compel Arbitration

PDX seeks to compel Adams to arbitrate her FLSA claim rather than litigate it in federal court. ECF No. 16-1, at 7–16. PDX points to the arbitration agreement that Adams signed, arguing that it is a valid, binding contract that covers her overtime claim.[2] *Id.* at 8–9; *see also* ECF No. 16-3 (arbitration agreement). Adams challenges PDX's ability to compel arbitration of this matter. ECF No. 23, at 7–12. She contends that the transportation worker exemption in the Federal Arbitration Act ("FAA"), the governing law over the arbitration agreement, prevents PDX from enforcing the arbitration agreement. *Id.*

PDX disputes the applicability of the FAA's transportation worker exemption to Adams: the complaint contains insufficient allegations that she was involved in interstate commerce. ECF No. 16-1, at 10–12. But in the event the exemption does apply, PDX urges the Court to

---

[2] PDX preemptively addressed any potential concerns regarding the fact that only one of the defendant entities executed the broker and arbitration agreements. ECF No. 16-1, at 13–16. Adams, in her responsive filings, does not attempt to argue that the agreements are unenforceable on that basis. *See* ECF Nos. 23, 33.

3

enforce the arbitration provision under Pennsylvania law. *Id.* at 16–17; *see also* ECF No. 27, at 6–10. Adams, however, argues that it would be impermissible to read Pennsylvania law into the arbitration agreement. ECF No. 23, at 12–17. Rather, Adams insists that the arbitration agreement rises and falls on the applicability of the FAA.[3] *Id.*

### 1. The parties agreed to arbitrate any disputes

At the core of the disagreement between the parties are two agreements that formed the basis of their relationship: a broker agreement and an arbitration agreement. In the broker agreement, PDX contracted with Adams to provide delivery services for its customers in the automotive industry. ECF No. 16-2, at 1; *see also id.* at 3 (describing Adams's duties and responsibilities). The agreement identified Pennsylvania law as governing over any questions relating to its "validity, interpretation, performance and enforcement." ECF No. 16-2, at 10. It also referenced the arbitration agreement—attached as an exhibit to the broker agreement—as governing over any "action, claim or proceeding arising out of or relating to [the broker agreement]."[4] *Id.*

---

[3] The Court has reviewed the motion to compel arbitration under the motion to dismiss standard. Aside from the affidavits described in footnote eleven, the parties solely rely on the amended complaint and the broker and arbitration agreements. The broker agreement was referenced in the complaint, and neither party disputes its authenticity. While the arbitration agreement was not mentioned in the complaint, it was attached as an exhibit to the broker agreement, and its authenticity is also not at issue. Moreover, the Court finds that the affidavits, which are only relevant to the question of the transportation worker exception, are not necessary for deciding the present motion. As such, the motion to dismiss standard is appropriate. *Cf. CardioNet Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) ("[Defendant] bases its motion to compel arbitration on language in the parties' contracts. Those contracts, though not appended to the Complaint, are integral to, and referenced in, the Complaint. Because the arbitration clause at issue appears in a contract relied upon in the Complaint, we resolve the motion to compel arbitration under a motion to dismiss standard, and accept as true the factual allegations set forth in the Complaint. We are also permitted to consider the substance of the contracts that ostensibly compel arbitration." (citations omitted)).

[4] The broker agreement also referenced the arbitration agreement in its integration clause, stating that: "[t]his Agreement and the Exhibit(s) attached to this Agreement contain the entire understanding between the parties with respect to the subject matter of this Agreement." ECF No. 16-2, at 10.

The arbitration agreement reflected the parties' preference, and assent, "to arbitrate any dispute arising between them, instead of engaging in litigation before a judge or jury." *See* ECF No. 16-3.[5] After detailing the specifics of the arbitration arrangement, the agreement selected the FAA as the governing law.[6] *See* ECF No. 16-3. Finally, the agreement contained a severability clause[7] and an integration clause.[8] *Id.*

### 2. The Court will assume that the FAA's transportation worker exemption is applicable

Although the FAA authorizes, and in fact requires, courts to enforce most private arbitration contracts, employment contracts for "transportation workers" are exempted from the FAA's purview.[9] *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 536 (2019); *see also* 9 U.S.C. § 1 ("[N]othing contained herein shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."). Therefore, the Court must first address the threshold question of whether Adams qualifies for the transportation worker exemption to determine the enforceability of the parties' arbitration agreement under the FAA.

---

[5] "Company and Contractor mutually agree that any dispute between them (including any dispute involving an employee, contractor or agent of Company) arising out of or relating to Contractor's engagement and/or relationship with or termination of engagement and/or relationship with Company shall be submitted to binding arbitration." ECF No. 16-2, at 10.

[6] "Company and Contractor find and agree that this Agreement relates to and arises out of a matter affecting and influencing interstate commerce, the Agreement shall be governed by the Federal Arbitration Act 9 U.S.C. §§1.16." ECF No. 16-3.

[7] "If any provision of this Agreement is held to be invalid or unenforceable, the remainder of this Agreement shall remain effective and/or may be modified by a Court." ECF No. 16-3.

[8] "This Agreement constitutes the entire agreement between the parties respecting the method of resolving Disputes, and supersedes any other oral or written agreement. This Agreement may not be modified, waived, or revoked except by a writing signed by both an authorized representative of Company and Contractor, which specifically refers to this Agreement." ECF No. 16-3.

[9] The Supreme Court recently confirmed that this exception applies equally to contracts establishing an employee-employer relationship as to those involving an independent contractor. *New Prime, Inc.*, 139 S. Ct. at 543–54.

A transportation worker, for purposes of the FAA exemption, is defined as only those "classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594 (3d Cir. 2004) (quoting *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 452 (1953)); *see also Singh v. Uber Tech. Inc.*, 939 F.3d 210, 214 (3d Cir. 2019) (holding that "the residual clause of § 1 may extend to a class of transportation workers who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it").

PDX argues that the transportation worker exemption is inapplicable here because the amended complaint lacks any allegation that Adams personally engaged in interstate commerce.[10] ECF No. 16-1, at 12. Adams counters that she "transported goods in the flow of interstate commerce, and even directly in interstate commerce." ECF No. 23, at 7. The averments in the amended complaint support this contention: she alleged that she worked as a driver for PDX, that her job responsibilities included transporting automotive parts and supplies, and that these parts and supplies were manufactured in various states and countries. ECF No. 15, ¶¶ 45–46. Moreover, such responsibilities were consistent with PDX's business model, which was to contract with drivers to "transport and distribute products in interstate commerce" to their

---

[10] To the extent that PDX contends that the transportation worker exception is inapplicable because there are no allegations that Adams personally delivered goods across state lines, the Court notes that two circuit courts recently addressed—and rejected—such a requirement. *See Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). In those cases, the plaintiffs "locally transport[ed] goods on the last legs of interstate journeys," and rarely, if ever, crossed state lines themselves. *Waithaka*, 966 F.3d at 13; *see also Rittman*, 971 F.3d at 907. When considering whether the plaintiffs were transportation workers for purposes of the FAA, the courts engaged in a thorough and rigorous analysis of the FAA, looking at the meaning of contemporaneous statutes, the sequence of words in section 1 of the FAA, the structure of the FAA, and the underlying purpose of the FAA and its transportation worker exemption. *Waithaka*, 966 F.3d at 18–26; *see also Rittman*, 971 F.3d at 909–19.

customers, who include "various businesses in the automotive industry throughout the east coast." *Id.* ¶¶ 30–31, 43–44.[11]

Taking the factual allegations as true, and drawing all reasonable inferences in Adams' favor, her arguments are compelling. Regardless, the Court need not definitively resolve whether she qualifies as a transportation worker for purposes of section 1 of the FAA. For the reasons explained below, even assuming, without deciding, that Adams was a transportation worker exempted from the FAA, the Court concludes that the arbitration agreement is still enforceable under Pennsylvania law.[12]

### 3. The arbitration agreement must be enforced pursuant to Pennsylvania law

The impact of an arbitration agreement falling within the scope of the transportation worker exemption is that the parties are to proceed "as if the [FAA] had never been enacted." *Palcko*, 372 F.3d at 596 (quoting *Mason-Dixon Lines, Inc. v. Local Union No. 560*, 443 F.2d 807, 809 (3d Cir. 1971)). In other words, the arbitration agreement may be enforced pursuant to state law rather than the FAA. *See id.* (holding that the plaintiff's status as a transportation worker exempt from the FAA does not preempt the enforcement of the arbitration agreement under state law).[13]

---

[11] For further support, Adams submitted affidavits confirming that she "transported goods on behalf of PDX, and that the goods [she] transported intrastate came from outside Florida and were part of an interstate journey." *See* ECF No. 23, at 5, 7; *see also* ECF No. 40-3, at ¶ 25. Because the Court ultimately chooses not to resolve the transportation worker issue, it did not rely on these affidavits when deciding the motion.

[12] *See Kauffman v. U-Haul Int'l Inc.*, No. 16-4580, 2018 WL 4094959, at *4–5 (E.D. Pa. Aug. 28, 2018) (Leeson, J.) (declining to decide whether the FAA's transportation worker exception was applicable because even if it was, the arbitration agreement was nevertheless enforceable under Pennsylvania law).

[13] Unlike here, the arbitration agreement's governing law provision, in *Palcko*, contained a contingency clause, specifying that Washington law would govern in the event the FAA is found to be inapplicable. *Palcko*, 372 F.3d at 590. Adams does not argue that the lack of a contingency clause prevents the enforcement of the arbitration agreement here, and "a number of courts have determined [that] an arbitration clause can be enforced under state law even in the absence of a state law contingency provision." *Kauffman*, 2018 WL 4094959, at *5 (citing to

This approach aligns with the underlying purpose of the FAA and its transportation worker exemption. Congress enacted the FAA "in an effort to counteract judicial hostility to arbitration and establish 'a liberal federal policy favoring arbitration agreements." *New Prime, Inc.*, 139 S. Ct. at 543 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Palcko*, 373 F.3d at 595 (explaining that the FAA was passed "to ensure judicial enforcement of privately made agreements to arbitrate,' rather than restrict the force of arbitration agreements" (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985))); However, before the FAA's enactment, Congress had already established dispute resolution alternatives for many transportation workers. *New Prime, Inc.*, 139 S. Ct. at 537. Therefore, the FAA was not meant to "unsettle those arrangements in favor of whatever arbitration procedures the parties' private contracts might happen to contemplate." *Id.* (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)).

Nevertheless, Adams resists any reading of the broker agreement's governing law provision into the arbitration agreement, pointing to the parol evidence rule and the "unambiguous" intent of the parties. ECF No. 23, at 12–17. Her arguments are unavailing.

First, Adams' reliance on the parol evidence rule is misplaced. "It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties." *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986) (examining whether a noncompetition agreement was incorporated by reference into a main purchase agreement). Where two written

---

*Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016) (collecting cases)).

agreements are construed together, Pennsylvania's parol evidence rule does not prevent the court from considering both agreements together, "notwithstanding the presence of an integration clause." *Id.* at 108.

Here, the broker and arbitration agreements were executed at the same time. ECF Nos. 16-2, 16-3. The broker agreement explicitly incorporates by reference the arbitration agreement: "Any action, claim or proceeding arising out of or relating to this Agreement shall be governed by the terms and conditions of the Arbitration Agreement between the parties, the form of which is attached to and made a part of this Agreement as Exhibit A . . . ." ECF Nos. 16-2, at 10. Both agreements share the same subject matter—the work relationship between Adams and PDX. *See* ECF Nos. 16-2, 16-3. For these reasons, the two agreements should be construed together, despite the integration clause contained within the arbitration agreement, and the parol evidence rule is inapplicable. Regardless, state law may be applied even if the contract "mentions no other law."[14] *Atwood*, 2016 WL 2766656, at *3.

Second, the arbitration agreement's "unambiguous" selection of the FAA does not invalidate the entire agreement in the event that Adams is found to qualify for the transportation worker exemption. It only means that the FAA's "enforcement mechanisms aren't available, not that the whole dispute can't be arbitrated by enforcing the contract through another vehicle (like state law)." *Atwood*, 2016 WL 2766656, at *3; *see also Arafa v. Health Express Corp.*, 233 A.3d 495, 507 n.2 (N.J. 2020) (rejecting "the proposition that the inapplicability of the FAA must

---

[14] There may be some question as to the correct state law to apply to the arbitration agreement, Pennsylvania or Florida. That question though is mostly academic as the arbitration laws of both states are substantially the same. *Compare O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 185 (Fla. 2006) (explaining that on a motion to compel arbitration, Florida courts must consider "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exits; and (3) whether the right to arbitration was waived"), *with Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 180 (Pa. Super. 2018) (explaining that on a motion to compel arbitration, Pennsylvania courts must consider (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute is within the scope of the agreement.").

vitiate the entire agreement to arbitrate"). The arbitration agreement's severability clause corroborates this conclusion, maintaining that if any provision is found to be unenforceable, then the remainder shall continue to be "effective and/or may be modified by a Court." ECF No. 16-3; *see also Kauffman*, 2018 WL 4094959, at *9 ("Under Pennsylvania law, a court may sever, or remove, an offensive term from a contract so long as doing so does not disturb the primary intent of the parties' agreement.").

Having found that Pennsylvania law may be used to enforce the parties' arbitration agreement, the Court must engage in the familiar two-step test before compelling arbitration by determining (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute is within the scope of the agreement." *Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 180 (Pa. Super. 2018).[15] Notably, Adams does not challenge the validity of the arbitration agreement itself nor argue that the FLSA claim falls outside its scope, and the Court finds no reason to conclude otherwise.

Accordingly, this case will be stayed pending the completion of arbitration proceedings for Adams's individual FLSA claim. *See* 42 PA. CONS. STAT. § 7304.

### B. Motion to Dismiss for Failure to State a Claim

In light of the above conclusion that Adams must arbitrate her individual FLSA claim, the Court will deny as moot PDX's motion to dismiss for failure to state a claim.

---

[15] Pennsylvania has a strong public policy favoring arbitration. *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1219 (Pa. Super. 2015).

## IV.     CONCLUSION

For the foregoing reasons, PDX's motion to compel arbitration is granted. This matter shall be stayed until the arbitration proceedings are complete. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge